**BOSE CORPORATION, Plaintiff,**

v.

**LINEAR DESIGN LABS, INC. and George C. Cuartero, Defendants.**

**No. 71 Civ. 3103.**

United States District Court,
S. D. New York.

Nov. 9, 1971.

**514**

Sandoe, Hopgood & Calimafde, New York City, for plaintiff; Charles Hieken, Waltham, Mass., of counsel.

White & Coch, P. C., New York City, for defendants.

MOTLEY, District Judge.

*Findings of Fact and Conclusions of Law*

This is an action by the plaintiff, Bose Corporation (Bose), against defendant, Linear Design Labs, Inc., (LDL), and its sole employee, George C. Cuartero (Cuartero), for alleged patent infringement and unfair competition relating to a pair of high fidelity loudspeakers known as the Bose 901.[1] Bose is a Massachusetts corporation with its principal place of business in Natick, Massachusetts. LDL is a New York corporation with a place of business in Nyack, New York. Defendant Cuartero is the president of LDL. He resides in Rye, New York. Jurisdiction and venue are predicated upon the patent and trademark laws of the United States. 35 U.S.C. §§ 271, 281, 28 U.S.C. § 1338, 15 U.S.C. §§ 1121, 1125(a), 1126(b) (h) and (i). There is also jurisdiction based upon diversity of citizenship of the parties. 28 U.S.C. § 1332.

The case is presently before the court on the motion of Bose for a preliminary injunction enjoining LDL from distributing its similarly designed loudspeakers, known as the LDL 749, or any other similarly designed loudspeakers without placing the name of either defendant on a normally visible surface.[2] Bose also seeks to enjoin defendants from distributing an advertisement (Complaint, Exh. 6) and a sales letter describing their product (Complaint, Exh. 7) on the ground that these documents contain certain false and misleading representations damaging to Bose.

LDL opposes the motion on two grounds: 1) plaintiff is not entitled to a preliminary injunction against infringement of the Bose patent issued June 1, 1971 because this patent has neither been adjudicated valid nor enjoyed long acquiesence in its validity; 2) an injunction against distribution of defendants' speakers should not be granted since it is not probable that plaintiff will suc-

---

1. The action was instituted on July 12, 1971.

2. The motion was filed on August 4, 1971.

ceed on the merits of its other claims. The court agrees with defendants' contentions and denies the motion.[3]

The Bose 901 loudspeakers have been manufactured and distributed to retail outlets by Bose since 1968. Bose holds two patents relating to these speakers. One patent, No. 3,582,553 ('553), was issued on June 1, 1971. The other patent, No. 3,038,964 ('964), was issued on June 12, 1962.

The inventions described in the '553 and the '964 patent are embodied in each Bose 901 loudspeaker. Each Bose 901 cabinet housing its speaker system is pentagonal in shape. According to Dr. Amar G. Bose, the inventor, he designed the Bose 901 for "optimum performance when in an actual listening area having an adjacent wall comprising part of the sound radiating system." (Bose Affidavit, p. 2). The speakers are designed "[t]o simulate in the home the reflected and direct sound present in a concert hall." (Bose Affidavit, p. 2). Consequently, each Bose 901 has eight long-excursion high compliance four-inch speakers mounted on the rear panels and a single speaker in front. (Bose Affidavit, p. 2). The two rear panels meet at an obtuse angle. The eight speakers at the back are mounted in clusters of four. The five sides of the speaker are covered with grill cloth and separate top and bottom walnut panels of pentagonal shape. Each four-inch speaker has a one-inch diameter voice coil with an eight-ohm impedance and a ten-ounce magnet. The dimensions of the Bose 901 are 20½″ by 12¾″ by 12⅞″. The normally visible areas of a Bose 901 speaker do not carry the Bose name. (Bose Affidavit, p. 2). The name appears only on the bottom of the speaker. (Tr. p. 33, 62).

Each LDL 749 cabinet housing its loudspeaker system is similarly pentagonal in shape. LDL 749 cabinets also have eight long-excursion high compliance four-inch speakers mounted on the rear panels and a single speaker in front,

two rear panels which meet at an obtuse angle slightly different from the Bose 901, and the eight speakers at the back are also mounted in clusters of four. The LDL four-inch speakers have the same eight-ohm impedance, the same one-inch voice coil diameter, and the same ten-ounce magnet. LDL 749 dimensions are 19½″ by 12½″ by 12″. The five sides of the LDL 749 speaker are also covered with grill cloth which separates top and bottom panels of pentagonal shape. (Plaintiff's Exh. 2, Cuartero Affidavit, p. 1–2, Bose Affidavit, p. 2–3).

Unlike the Bose 901, the LDL 749 has a black colored grill cloth, while the Bose 901 has a beige or gray and white colored grill cloth. (Tr. p. 17). The top and bottom panels on both models are made of walnut wood, but the Bose 901 panels prominently overhang. (Tr. p. 61). The Bose 901 also has vertical walnut posts at the front corners of the cabinet while the LDL 749 has only one post in the back. (Tr. p. 62). The top and bottom panels on the Bose 901 form a wider angle than on the LDL 749. (Tr. p. 61). The two rear panels of the Bose 901 on which the speaker clusters are mounted form an angle of 120° whereas the angle formed by the similar rear panels in the LDL 749 form an angle of 134°. (Bose Affidavit, p. 7, Tr. p. 60–61).

LDL's name appears on the front of its cabinet in the lower right hand corner (Plaintiff's Exh. 2, Tr. p. 44, 62, 179), on the carton in which it is shipped, (Tr. p. 43–44), and on all of its sales and promotional literature. (Complaint, Exhs. 6 and 7). The Bose name appears only on the bottom of its cabinet and on the front panel of the separately packaged electronic equalizer. The LDL 749 does not have an equalizer. (Bose Affidavit, p. 8).

The Bose 901 sells for $476 per stereo pair (including the equalizer) whereas the LDL 749 sells for $279.50 per stereo pair. During the last fiscal year ending June 30, 1971, Bose sold 10,000 sets of

---

3. A hearing on the motion was held on August 17, 18, 19, 1971.

the Bose 901, amounting to about $5,-000,000 in retail sales. LDL has so far sold only 35 pairs of its model. (Tr. p. 142-143). Cuartero is the only employee of LDL. (Bose Affidavit, p. 9). Over the past three years, Bose claims, it has expended about a million dollars for sales and promotional activity and has received acclaim for its product. (Bose Affidavit, p. 4, Complaint, Exh. 3). However, an article appearing in the May 1970 issue of *Consumer Reports* (Defendants' Exh. B) did not acclaim the Bose 901 system. This has lead to the institution of a suit by Bose against the Consumer's Union. (Tr. p. 70).

The complaint alleges that defendants are infringing the Bose patents by making, selling, and using loudspeaker systems embodying the patented invention and by aiding and abetting others to do likewise. It further alleges that defendants are contributing to infringement by selling a component of the patented loudspeaker system which constitutes a material part of the invention, knowing that the part is specially made or adapted for use in an infringement process and is not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271.[4] The complaint then alleges that Bose has placed the required statutory notice on all loudspeaker systems manufactured and sold by it under Letter Patent '964. Apparently no such notice has been given with respect to Letter Patent '553. Further, the complaint alleges, defendants have received written notice of the alleged infringement by letters dated May 5, 1971 and June 24, 1971 which asked defendants to let plaintiff know what steps were being taken to avoid infringement, followed by a telephone call on July 2, 1971, but defendants have not replied.

For the purposes of this motion for preliminary injunction, however, Bose relies upon only one claim, Claim 35, of its '553 patent (June 1, 1971), as the basis for its allegation that defendants have been and are infringing its Letters Patent. (Tr. p. 74). That claim reads as follows:

35. A loudspeaker system comprising, sound radiating means, and means for supporting said sound radiating means for directing of the order of 87 percent of the sound energy therefrom upon a reflecting surface and then to a listener when said sound radiating means is normally positioned in a room while directing of the order of 13 percent of the sound energy therefrom directly to a listener when said sound radiating means is normally positioned in a room.

It is settled in this Circuit that in the absence of a prior adjudication of validity, or long public acquiescence of validity beyond question, the granting of a preliminary injunction in a patent infringement suit is improper, notwithstanding the statutory presumption of validity. Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp., 443 F.2d 867 (2d Cir. 1971).

Here the patent claim in suit is contained in a patent which was only about six weeks old when this infringement suit was filed and only about two months old when the instant motion for preliminary injunction was filed. In view of defendants' contention that claim 35 embodies no more than the elementary concept embodied in every concert hall—the placement of the orchestra in front of a proper back wall—and the concession of plaintiff's expert that such concept is one of the main principles embodied in Claim 35, (Tr. p. 146-148, See also, Bose Affidavit, p. 2), this court

4. Bose purchases its four-inch speakers from "CTS" in accordance with specifications given it by Bose. Bose claims defendants purchase these same four-inch speakers from "CTS" also. (Bose Affidavit, p. 3). Defendants deny that they now receive their four-inch speakers from the same source as plaintiff. (Cuartero Affidavit, p. 2). This apparently is the basis of plaintiff's claim that defendants are infringing the Bose patent by selling a particular component which constitutes a material part of the invention.

cannot say that Claim 35 in Bose' patent '553 is valid beyond question. On the contrary, it is plain that the test of non-obviousness which the claim must survive to be held valid will be difficult in this case. Carter-Wallace, Inc., *supra*; Lemelson v. Topper Corporation, 450 F.2d 845 (decided October 22, 1971). The court, therefore, denies the preliminary injunction sought on the claim of patent infringement.

■ Plaintiff seeks to enjoin defendants from distributing their LDL 749 on the ground that defendants have distributed their product in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[5] Plaintiff says that defendants, by copying plaintiff's product and failing to place either name thereon, have misled the public as to the origin of their allegedly inferior product. In addition defendants have damaged plaintiff and confused the public by making false descriptions of their product and by making false claims with respect to their product's ability to perform. A claim for relief on common law principles of unfair competition is also made on these allegations.

There are no facts alleged in the complaint and no facts presented on the hearing of the motion for preliminary injunction or in the moving papers relating to any registered trademark or the use of any trade name. It is therefore unclear as to how § 44(b) (h) and (i) of the Lanham Act are applicable to this case. 15 U.S.C. § 1126(b) (h) and (i). Section 44 simply grants to United States citizens and residents the same benefits that any convention or treaty grants to aliens as far as unfair competition is concerned. American Automobile Ass'n v. Spiegel, 205 F.2d 771 (2d Cir. 1953), cert. denied, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391. The only reference to a registered trademark is a statement which appears in plaintiff's memorandum in support of its motion which reads as follows: "The Bose 901 loudspeaker system has been sold under its registered Bose logo and other trademarks." (p. 3). However, that sentence is only the first sentence of a paragraph, the remainder of which reads: "In addition from the start Bose has extensively promoted the unique appearance of the Bose 901. This unique appearance may be described as a cabinet of pentagonal cross section having a wide front panel, two angled rear panels, and two narrower side panels, all covered by grill cloth, and separating a pentagonal walnut top from a pentagonal walnut bottom. Because of its uniqueness Bose left the Bose name off the visible surfaces and promoted the unique appearance as a symbol indicating Bose as the origin of loudspeakers with this appearance." (p. 3). Then at another point in its memorandum plaintiff says: "The uniquely appearing Bose 901 loudspeaker system, while not a registered trademark, indicates origin with Bose. It may thus be regarded as a common law trademark whose infringement under circumstances like those here give rise to a cause of action under Section 43(a), . . . ., authorizing a preliminary injunction against such infringement." (p. 11). There is no claim that defendants have used the name Bose or any other registered trademark or trade name on any of its products. It thus appears that what plaintiff claims has been infringed by defendants is a common law

---

5. The provisions of that statute reads as follows:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

trademark, not a registered trademark, and that the claim (which includes the claim of trademark infringement) is one for unfair competition under the common law of New York and for false representation of goods in commerce under § 43(a) of the Lanham Act, there being no federal cause of action for unfair competition under § 44 of the Lanham Act. *Alum-A-Fold Shutter Corporation v. Folding Shutter Corporation*, 441 F.2d 556 (5th Cir. 1971); *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); *American-Marietta Company v. Krigsman*, 275 F.2d 287 (2d Cir. 1960); *Field Enterprises Educational Corp. v. Cove Industries, Inc.*, 297 F.Supp. 989 (S.D. N.Y.1969); *Thomson Industries, Inc. v. Nippon Thompson Co.*, 298 F.Supp. 466 (E.D.N.Y.1968); *Remco Industries, Inc. v. Toyomenka, Inc.*, 286 F.Supp. 948 (S.D.N.Y.1968), aff'd, 397 F.2d 977 (2 Cir. 1968); *Crossbow, Inc. v. Dan-Dee Imports, Inc.*, 266 F.Supp. 335 (S.D.N.Y. 1967); 28 U.S.C. § 1338(b).

■ Under New York's law of unfair competition, Bose would ultimately be entitled to injunctive relief if it proved secondary meaning plus likelihood of confusion or that defendants had engaged in "palming off", actual deception, or misappropriation of a property right. *Clairol, Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir. 1968); *Flexitized, Inc. v. National Flexitized Corp.*, *supra*; *Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc.*, 291 F.2d 302 (2d Cir. 1961), cert. denied, 368 U.S. 889, 82 S.Ct. 143, 7 L. Ed.2d 88; *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); *Speedry Products, Inc. v. Dri Mark Products, Inc.*, 271 F.2d 646 (2d Cir. 1959); *Field Enterprises Educational Corp.*, *supra*; *Ventura Travelware, Inc. v. Baltimore Luggage Co.*, 66 Misc.2d 646, 322 N.Y.S. 2d 93 (Sup.Ct.N.Y.County 1971).

And with the knowledge that state laws relating to unfair competitive practices retain their vitality notwithstanding *Sears* and *Compco's* holding that an article which does not have federal patent or copyright protection is in the public domain and may be copied in every detail by whoever desires to do so,[6] we proceed to a determination of whether Bose has sustained its burden of showing a clear probability of success upon the trial *and* possible irreparable injury, *Checker Motors Corporation v. Chrysler Corporation*, 405 F.2d 319 (2d Cir. 1969), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777; *Clairol, Inc. v. Gillette Company*, *supra*, thereby authorizing the issuance of a preliminary injunction.

■■ Unfair competition under the law of New York, as noted above, includes the illegal practice of "palming off" one's goods as those of another. *American-Marietta Company*, *supra*; *Remco Industries, Inc.*, *supra*; *Ventura Travelware, Inc. v. Baltimore Luggage Co.*, *supra*. Plaintiff claims that defendants are guilty of "palming off" their goods for those of plaintiff to the injury and damage of plaintiff. (Plaintiff's Memorandum in Support, p. 11–12). The most explicit examples of "palming off" are the placing of the trademark or trade name of another on one's goods, using the product of another as a model for the sale of one's goods, or utilizing a photograph of another's product to sell one's goods. *American-Marietta Company*, *supra*; *Remco Industries, Inc.*, *supra*. These and similar practices would also constitute the basis for an action under § 43(a) of the Lanham Act. *Alum-A-Fold Shutter Corp.*, *supra*; see *Crossbow, Inc.*, *supra*, and cases cited therein.

Bose suggests that LDL has used a photograph of the Bose 901 to sell LDL's allegedly inferior product. (Tr. p. 189–190). But the evidence does not sustain this suggestion. Bose's Exhibit 8 (Exhibit 6 attached to complaint) is an LDL

---

6. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite*

*Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

advertisement containing a picture of its speaker. The literature is clearly marked LDL 749 and is different in color from plaintiff's literature. The overhang so prominent on the Bose 901 speaker [Defendant's Exhibits D and E) is not shown in Exhibit 8. The model shown in Exhibit 8, therefore, does not appear to be the same as the Bose 901 speaker. Moreover, the Bose model is exhibited on a decorative white stand (Defendant's Exhibits C, D, and E) which is not present in Exhibit 8. Finally, there simply has been no proof that defendants have, in fact, "palmed off" or attempted to "palm off" their speaker as that of plaintiff. No customers or salesmen were called to testify. Woodstream Corp. v. Herter's Inc., 446 F.2d 1143 (8th Cir. 1971); Remco Industries, Inc., *supra*; Ventura Travelware, Inc., *supra*.

Whether the LDL 747 is an inferior product in relation to the Bose 901 and whether certain claims made by defendants in their literature as to the ability of the LDL 747 to perform are false claims which have damaged Bose in the marketplace are disputed issues of fact as the Consumer Report and other testimony indicates. (Defendant's Exhibit B). Dr. Bose was not present at the hearing on plaintiff's motion for preliminary injunction and, consequently, could not be cross-examined by defendant as to his allegations of inferiority of defendant's product. Plaintiff relied primarily on Dr. Bose's affidavit and other third party reviews, none of which was subject to cross examination of its authors.

Although the photograph of defendant's speaker (Plaintiff's Exh. 8) did not reveal its name on the face of the speaker, the LDL 749 speaker, itself, now bears its name on the lower right front. (Plaintiff's Exh. 2). Defendant's product (Plaintiff's Exh. 2) when purchased by plaintiff (Tr. p. 180–181) is now clearly marked, contrary to plaintiff's main contention that defendants' speakers did not bear either name. The box in which the speaker came was also marked with the name LDL 747 (Tr. p. 20–21) as well as the bottom of the speaker (Tr. p. 179). There is no claim that plaintiff's packaging has been copied. The fact that defendant's speaker, its packaging, and advertising is labeled with its own name makes the probability of success upon the trial slight, indeed, on the § 43(a) cause of action as well as on the unfair competition claim. Remco Industries, Inc., *supra*; Ventura Travelware, Inc., *supra*.

One of plaintiff's own expert witnesses, a Bose employee, testified that the angled rear panels on the Bose 901 are definitely of functional importance (Tr. p. 60). Clearly, the functional features of an unpatented article are not protectable. American-Marietta Company, *supra*; Remco Industries, Inc., *supra*; Ventura Travelware, Inc., *supra*.

The trade dress of the Bose 901 is not patented although the speaker system is patented as discussed above. (Tr. 184). As to those non-functional features of the Bose 901, such as the wrap-around grill cloth, the pentagonal shape, and the overhang (Tr. p. 186–187), Bose is entitled to protection, as stated above, if it can show secondary meaning *and* a likelihood of confusion. Although there may be a likelihood of confusion since the speakers are similarly designed, there has been an insufficient showing of secondary meaning. All we have is Dr. Bose's allegation that he believes people seeing the LDL 749 would believe that the LDL 749 came from the same source as the Bose 901. There has been no showing as to any connection between these non-functional features and Bose in the minds of the public and no showing that purchasers have been motivated to buy the Bose 901 because of its source. Remco Industries, Inc., *supra*. Advertising expenditures do not establish secondary meaning. *Id*. The same is true of sales volume and popularity. *Id*. In this connection it is also noted that the Bose 901 has been on the market only since 1968. Time is a factor to be considered in determining whether secondary meaning has attached in the minds of the public to certain non-functional

features. Speedry Products, Inc., v. Dri Mark Products, Inc., *supra.* No unbiased, non-speculative evidence of irreparable injury to plaintiff was offered. No substantial monetary damage to plaintiff has been shown. The number of speakers actually sold by defendants has been relatively small, 35 pair as opposed to 10,000 pair in one year by Bose. Consequently, there has been no evidence of any great shift of customers away from Bose because of the activities of defendants.

A clear showing of probable success upon the trial *and* possible irreparable injury has not been made by Bose as to either unfair competition or false representation of goods in commerce, thus the motion for preliminary injunction must also be denied as to the claim of unfair competition and false designation of goods in commerce.

Submit order on 10 days' notice.