**TOHO COMPANY, LTD., a Japanese Corporation, and H. G. Saperstein, an individual, doing business as H. G. Saperstein and Associates, Appellants,**

v.

**SEARS, ROEBUCK & CO., a New York Corporation, Appellee.**

C.A. No. 78–3739.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1980.

Decided May 18, 1981.

Rehearing and Rehearing En Banc Denied July 15, 1981.

Thomas M. Small, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for appellants.

B. G. Nilsson, Los Angeles, Cal., argued for appellee; Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., on brief.

Before KENNEDY, FLETCHER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Toho Company and H. G. Saperstein appeal from the district court's rule 12(b)(6) dismissal of their action alleging trademark infringement and unfair competition. We affirm.

## I. GODZILLA AND BAGZILLA

Toho Company is a Japanese limited corporation. Since the 1950's, Toho and its licensees have produced and distributed movies and a television cartoon series featuring Godzilla, a fictitious, gigantic, green, lizard-like monster. Pictorial representations of the monster are used to promote the movies and series, as is the slogan "King of the Monsters."

Saperstein is Toho's exclusive merchandising representative of the Godzilla name and character for the United States and Canada.[1] Toho, through Saperstein, has licensed others to produce Godzilla merchandise, including comic books, coloring books,

---

1. Although the complaint alleges that Saperstein is. a resident of California, it makes no allegation regarding Saperstein's citizenship.

sheet vinyl toys, a game, and slide transparencies. Toho alleges that it has licensed others to use the term Godzilla, depictions of the monster, and the "King of the Monsters" phrase for use in promoting merchandise.

Toho sued Sears, Roebuck & Co. seeking monetary damages and injunctive relief for what Toho alleged was improper use by Sears of a likeness of Toho's movie character, Godzilla. Sears, a New York corporation, sells garbage bags in boxes which designate the bags as a Sears product, but which also display the word "Bagzilla," depict a "comic, helpful, personified reptilian creature," and carry the legend "Monstrously Strong Bags."

Toho's complaint alleges five causes of action:

(1) false designation of origin, or false description or representation, under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976);

(2) infringement of common law trademark;

(3) federal unfair competition under section 44(b) of the Lanham Act, 15 U.S.C. § 1126(b) (1976);

(4) state unfair competition under California Business and Professions Code §§ 14330 (dilution) and 17500 (false or misleading statements) (West Supp.1980) and under former California Civil Code § 3369 (West 1970) (present version codified at Cal. Bus. & Prof.Code §§ 17200–17208 (West Supp.1980)) (unfair competition generally);

(5) misappropriation and unjust enrichment under state law.

## II. FALSE DESIGNATION OF ORIGIN

■ Under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), a claimant may prove the validity of an unregistered mark without the benefit of the presumption of validity that registration confers. In addition to showing that the mark has become identified with the manufacturer by acquiring a "secondary meaning," see *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203 & n.5 (2d Cir. 1979); *Frederick Warne & Co. v. Book Sales Inc.*, 481 F.Supp. 1191, 1195 (S.D.N.Y.1979); *see generally* 1 J. T. McCarthy, *Trademarks and Unfair Competition* § 15:10 (1973), the claimant must show that the defendant has created a likelihood of confusion as to the origin of its products, *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980); *New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004, 1010 (5th Cir.), cert. denied, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *Frederick Warne & Co. v. Book Sales Inc.*, 481 F.Supp. 1191, 1195–96 (S.D.N.Y.1979). Thus, Toho's section 43(a) claim must fail if Sears' use of the Bagzilla name, figure, or slogan poses no likelihood of confusing consumers by suggesting that the Sears trash bags were made, sponsored or endorsed by Toho.

In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), we set forth eight factors that are relevant to the likelihood of confusion:

1. strength of the plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

Because Toho's complaint was dismissed for failure to state a claim, we have no evidence to help us in assessing these factors. The complaint's allegations must be accepted as true. Nonetheless, this much is not disputed: Sears sells garbage bags. Toho produces or sponsors only literary works and toys. Sears uses "BAGZILLA" instead of "GODZILLA" and puts the Sears name prominently on the package. The representation of the creature is a humorous caricature rather than an exact copy. The marketing channels are different.

The goods are unrelated as a matter of law. *Cf. J.B. Williams Co. v. Le Conté*

*Cosmetics, Inc.,* 523 F.2d 187, 190–93 (9th Cir. 1975) (where nature of goods undisputed, relatedness of goods is a matter of law), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976). Moreover, the contention that Sears intends to confuse consumers is implausible: Sears means only to make a pun.[2] Our examination of the *Sleekcraft* factors leads us to conclude that Toho has not alleged facts that would permit a conclusion that consumers are likely to be confused as to source or sponsorship of the garbage bags.

## III. CALIFORNIA TRADEMARK LAW

 Appellants also assert a claim based on the California common law of trademarks. The complaint alleges "infringement of common law trademark rights." Because there is no federal common law of trademark infringement, *see International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 915 (9th Cir. 1980), California law governs this allegation. This body of law focuses on the likelihood of confusion as to source or sponsorship. *See* 7 B. Witkin, *Summary of California Law, Equity* §§ 70, 74 (8th ed. 1974). Without likelihood of confusion there is no infringement under the California common law of trademarks. Because the products at issue are unrelated, the complaint states no cause of action under California trademark law.

## IV. FEDERAL UNFAIR COMPETITION

Toho asserts a claim against Sears based upon a federal law of unfair competition.

It grounds this claim on subsections 44(b), (h), and (i) of the Lanham Act, 15 U.S.C. § 1126(b), (h), (i) (1976), as interpreted by our decisions in *Stauffer v. Exley,* 184 F.2d 962 (9th Cir. 1950), and *Pagliero v. Wallace China Co.,* 198 F.2d 339 (9th Cir. 1952). Subsection 44(b) of the Lanham Act provides that citizens of foreign nations with which the United States has trademark, trade name, or unfair competition treaties shall be entitled to the benefits of section 44 to the extent necessary to give effect to the provisions of the treaty. Subsection (h) provides that persons described in subsection (b) "shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition." 15 U.S.C. § 1126(h) (1976). Finally, subsection (i) grants citizens or residents of the United States the same benefits that section 44 confers upon foreigners described by subsection (b). In *Stauffer* and *Pagliero* we construed these provisions[3] to create a federal law of unfair competition that prohibited false designation of the origin of goods. Both Toho and some commentators have read language in those cases to grant to all persons a federal right to effective protection from unfair competition by use of appropriate trademark remedies. *E. g.,* 2 J. T. McCarthy, *Trademarks & Unfair Competition* § 32:2E (1973).

We recently considered the *Stauffer/Pagliero* language in *International Order of Job's Daughters v. Lindeburg & Co.,*

2. In *Universal City Studios, Inc. v. Montgomery Ward & Co.,* 207 U.S.P.Q. 852 (N.D.Ill.1980), the maker of the movies "JAWS" and "JAWS 2" brought a trademark and unfair competition suit against Montgomery Ward. The suit challenged Ward's use of the names "Jaws One," "Jaws Two," and "Jaws Power" to identify its trash compactors. The district court granted a preliminary injunction, finding a likelihood of confusion as to source, approval, or sponsorship. The court stated that Ward's adoption of the "Jaws" name "with an intent to capitalize on the plaintiff['s] mark permits the Court to draw the strong inference of likelihood of confusion." *Id.* at 857 (conclusion 13). In our

view, the *Jaws* court erred when it assumed that an intent to "capitalize" was enough. In order to raise the inference of a likelihood of confusion, a plaintiff must show that the defendant intended to profit *by confusing consumers. See HMH Publishing Co. v. Brincat,* 504 F.2d 713, 720 & n.12 (9th Cir. 1974) (inference raised by showing of "the intent to confuse").

3. *Stauffer* and *Pagliero* also purported to construe subsection 44(g), 15 U.S.C. § 1126(g) (1976), which protects trade names and commercial names.

633 F.2d 912 (9th Cir. 1980). There we stated that the Lanham Act's protections extend to only two species of the generic tort of unfair competition: infringement of registered trademarks, 15 U.S.C. § 1114 (1976), and false designation of the origin of goods, 15 U.S.C. § 1125(a) (1976). 633 F.2d at 915. Thus, federal law does not prohibit a broad range of acts defined as unfair competition by the law of many states. *Id.* at 916. *Job's Daughters* limited the federal tort of unfair competition created by *Stauffer* and *Pagliero* to the type of conduct actually involved in those cases: false designation of the origin of goods. *Id.* at 915 n.5.[4]

Unlike *Job's Daughters, Stauffer,* and *Pagliero,* however, this case involves a plaintiff who is a national of a country with which the United States has a trademark treaty. *See* Treaty of Friendship, Commerce and Navigation, Apr. 2, 1953, United States—Japan, art. X, 4 U.S.T. 2063, 2071, T.I.A.S. No. 2863. We therefore must decide what protection section 44 provides to nationals of countries having trademark treaties with the United States.[5]

■ Section 45 of the Lanham Act, 15 U.S.C. § 1127 (1976), states that one intent of the Lanham Act is "to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations." Section 44 carries out this intent. The grant in subsection (h) of effective protection against unfair competition is tailored to the provisions of the unfair competition treaties by subsection (b), which ex-

tends the benefits of section 44 only to the extent necessary to give effect to the treaties. The federal right created by subsection 44(h) is coextensive with the substantive provisions of the treaty involved. *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 654 (3d Cir. 1954); *cf. Pagliero,* 198 F.2d at 342 ("We do not think that the rights created by § 44(h) go further than the treaties in this respect."). In this way, subsections (b) and (h) work together to provide federal rights and remedies implementing federal unfair competition treaties.[6] *See generally SCM Corp. v. Langis Foods Ltd.,* 539 F.2d 196, 199–200 (D.C. Cir. 1976); *L'Aiglon,* 214 F.2d at 651–54; *American Auto. Ass'n v. Spiegel,* 205 F.2d 771, 774–75 (2d Cir. 1953).

■ The Treaty of Friendship, Commerce and Navigation, Apr. 2, 1953, United States—Japan, art. X, 4 U.S.T. 2063, 2071, T.I.A.S. No. 2863, requires the United States to accord Japanese nationals and companies treatment "with respect to rights in trade marks, trade names, trade labels and industrial property of ever kind" that is at least as favorable as (1) the treatment accorded nationals and companies of the United States and (2) that accorded to the nationals and companies of most favored nations. *See also id.* art. XXII (1), (2), (4). The treaty's requirement that Japanese companies be treated at least as favorably as the companies of "most favored nations" does not require treatment as favorable as that accorded to companies with which the United States has special arrangements. *See Bartram v. Robertson,* 122 U.S. 116, 119–21, 7 S.Ct. 1115, 1117–

---

**4.** Our application of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), in *New West Corp. v. NYM Co.,* 595 F.2d 1194 (9th Cir. 1979), to prohibit false designation of origin of goods has apparently rendered the *Stauffer/Pagliero* doctrine nugatory in suits between United States citizens.

**5.** The complaint does not allege that plaintiff Saperstein is a national of a country with which the United States has an unfair competition treaty. *See supra* note 1. Accordingly, Saperstein is not entitled to the protections of section 44 here.

**6.** The Second and Third Circuits have read subsection 44(i), 15 U.S.C. § 1126(i) (1976), to grant United States residents a reciprocal right to protection against unfair competition by foreigners where section 44 protects foreigners against unfair competition by United States residents. *See L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 651–54 (3d Cir. 1954); *American Auto. Ass'n v. Spiegel,* 205 F.2d 771, 774–75 (2d Cir.), *cert. denied,* 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391 (1953). This interpretation is not inconsistent with the present law of this circuit.

1118, 30 L.Ed. 1118 (1887). The treaty at issue here therefore requires only that Japanese companies be treated as favorably as domestic companies.

Domestic companies are entitled to federal protection against trademark infringement, 15 U.S.C. § 1114 (1976), and passing off, 15 U.S.C. § 1125(a) (1976). They are also entitled to the protection accorded them by any applicable state law of unfair competition. Subsection 44(h) requires only that Toho be granted these same protections because it extends only as far as is necessary to give effect to the treaty. Thus, the practical effect of section 44 and this treaty is to provide a federal forum in which Toho can pursue its state claims. We therefore consider Toho's state and federal unfair competition claims together.

## V. CALIFORNIA UNFAIR COMPETITION

Toho's fourth and fifth causes of action alleged that Sears had violated various aspects of the California law of unfair competition.

### A. Anti-Dilution Statute

■ Toho argues that it has a cause of action under the California anti-dilution statute, which provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Cal.Bus. & Prof.Code § 14330 (West Supp. 1980). The dilution doctrine has been described as granting protection "to strong, well recognized marks even in the absence of a likelihood of confusion, if defendant's use is such as to tarnish, degrade or dilute the distinctive quality of the mark." 2 J. T. McCarthy, *Trademarks & Unfair Competition* § 24.13, at 155 (1973). The focus is on damage to the mark's inherent value as a symbol, rather than on whether consumers have been misled as to origin or sponsorship.

We have regarded the antidilution doctrine with some concern " 'lest it swallow up all competition in the claim of protection against trade name infringement,' " *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 803 n.3 (9th Cir. 1970) (quoting *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F.Supp. 1210, 1217 n.13 (N.D. Cal.1969)); *HMH Publishing Co. v. Lambert*, 482 F.2d 595, 599 & n.8 (9th Cir. 1973) (same).

Sears' use of "Bagzilla" has not impaired the effectiveness of the name and image of Godzilla. *Cf. Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 844 (D.Mass.1964) (appropriation of the name "Tiffany" for a Boston restaurant). Neither does Sears' use of the reptilian monster character on its garbage bag packages link Godzilla with something unsavory or degrading, as occurred in *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F.Supp. 1183, 1191–92 (E.D.N.Y. 1972) (court found dilution under a similar statute in defendant's sale of "Enjoy Cocaine" posters in a script and color similar to that of the Coco-Cola mark). *See also Dallas Cowboys*, 604 F.2d at 202–03 (2d Cir. 1979). We therefore reject Toho's allegation of dilution.

### B. General Unfair Competition Statute

California Business and Professions Code sections 17200–17208 (West Supp.1980) establish a remedy for the broad tort of unfair competition. *See generally* Note, *Former Civil Code Section 3369: A Study in Judicial Interpretation*, 30 Hastings L. J. 705 (1979). Toho argues that Sears' conduct is actionable under three branches of this tort: (1) passing off, (2) misleading advertising, and (3) misappropriation.

■ Our previous conclusion that Sears' actions pose no likelihood of confusion disposes of Toho's passing off claim. California courts have construed the tort of passing off to require likelihood of consumer confusion as to source or sponsorship. *Walt*

*Disney Productions v. Air Pirates,* 581 F.2d 751, 760 (9th Cir. 1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). Under California law, unfair competition also includes misleading advertising. *See* Cal.Bus. & Prof.Code §§ 17200, 17500 (West Supp.1980). The absence of likelihood of confusion, however, precludes acceptance of Toho's assertion that Sears' use of "Bagzilla" is misleading.

Toho's attempt to bring its case under the misappropriation branch of California unfair competition law also fails. The California law of misappropriation draws from the pre-*Erie* doctrine of federal common law formulated in *International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed.2d 211 (1918). There, the Court held that the International News Service behaved tortiously when it copied the substance of AP's uncopyrightable news stories from AP's newspaper-subscribers on the East Coast and wired the stories to International's West Coast subscribers. The California doctrine of misappropriation prohibits the substantial copying of another's commercial labors even when there is no likelihood of confusion. It has been applied to record and tape piracy. *E. g., A & M Records, Inc. v. Heilman,* 75 Cal.App.3d 554, 564, 142 Cal.Rptr. 390, 396 (1977), *appeal dismissed and cert. denied,* 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978); *Capitol Records, Inc. v. Erickson,* 2 Cal.App.3d 526, 536–38, 82 Cal.Rptr. 798, 805–06 (1969), *cert. denied,* 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970). There is no similar substantial taking by Sears in this case. The only "taking" Toho alleges relates to Sears' use of its trademark, and Toho cites no cases extending the misappropriation theory to trademark infringement. We believe that California courts would refuse to make such an extension. *See Pagliero v. Wallace China Co.,* 198 F.2d 339, 341–43 (9th Cir. 1952) (refusing to extend misappropriation doctrine to prohibit copying of design).

\* \* \* \* \* \*

Toho has failed to allege that Sears has violated any aspect of California unfair competition law. This failure also disposes of Toho's unfair competition claims under federal law, which in this case incorporates state law.

Affirmed.