**Lynda CLARK, Plaintiff,**

v.

**CELEB PUBLISHING, INC., Nick Melillo, and Does 1 Through 25, Inclusive, Defendants.**

**No. 81 CIV. 3014 (CBM).**

United States District Court,
S. D. New York.

Dec. 2, 1981.

OPINION

MOTLEY, District Judge.

This is a diversity action brought by plaintiff Lynda Clark against defendant Celeb Publishing, Inc. (Celeb) for the unauthorized publication of certain photographs of plaintiff in Celeb Magazine. Plaintiff seeks one million dollars in compensatory and punitive damages, respectively, for the unauthorized use of her photographs and for the invasion of her privacy. A default judgment was entered against Celeb on July 2, 1981. The only remaining issue before this court is the amount of damages plaintiff is entitled to recover.

*Facts*

Plaintiff is a self-employed professional model and actress. Her photographs have appeared in a broad range of advertisements, as well as in Forum and Penthouse Magazines. Celeb is a New York Corporation which publishes Celeb Magazine. Celeb Magazine can best be characterized as a low quality and very explicit pornographic magazine.

In March, 1981, plaintiff became aware that certain photographs of her were being used on the cover of and in advertisements for the April and May, 1981, issues of Celeb Magazine.[1] At no time had plaintiff consented to the publication of these photographs by Celeb. Plaintiff, through her attorney, immediately demanded that Celeb cease and desist from the distribution of all issues of Celeb Magazine containing plaintiff's photographs (Exhibit 3). At the time of the demand, the April issue of Celeb, with plaintiff's photograph appearing on the cover and in two advertisements for Celeb Magazine inside, was already on the newsstands. Celeb refused to withdraw the April issue from the newsstands and, ignoring the demand of plaintiff's attorney, placed on the newsstands the May & June issues of the magazine. These issues contained a photograph of plaintiff getting

Goldstein & Litwalk, New York City, for defendants.

Vincent Pavis, Los Angeles, Cal., for plaintiff.

---

1. The photographs had been taken several years earlier in connection with a personal portfolio. Although plaintiff, in 1979, had entered into an agreement with the photographer providing that the photographs would not be used for any purpose, the photographer appears to have ignored the agreement. The photographer was named as a defendant in this action but was never served.

undressed with the caption "Take off your pants and subscribe to Celeb" in an advertisement for subscriptions to the magazine. The April issue had contained the identical subscription advertisement, as well as a photograph of plaintiff on the cover and in the back of the magazine.

Plaintiff claims to have suffered sleeplessness, loss of appetite, nervousness and a lack of concentration as a result of the publication of these photographs in Celeb Magazine. She is currently undergoing medical treatment in connection with the ongoing health problems stemming from this unpleasant episode.

Plaintiff also claims that her appearance in Celeb Magazine has caused her to be ridiculed by her friends and former advertising clients. She asserts that the use of her photographs in the magazine has damaged her ability to receive work and appear in more "serious" films, advertisements and theatrical works. Specifically, she claims that Penthouse Magazine and several of the companies that regularly advertise in it want nothing more to do with her due to her appearance in Celeb Magazine.

*Discussion*

■ As this is a diversity action, this court must first determine which law would be applied by a New York court in the instant case. New York, in tort cases, applies "governmental interest analysis," which looks for the forum with the greatest interest in having its policies applied and the most significant relationship with the facts and the parties. *Delbrueck & Co. v. Manufacturers Hanover Trust Co.*, 464 F.Supp. 989, 993 (S.D.N.Y.), *aff'd* 609 F.2d 1047 (2d Cir. 1979). This interest analysis applies even where the sole issue for determination is the measure of damages a plaintiff is entitled to receive. *Gordon v. Eastern Air Lines, Inc.*, 391 F.Supp. 31 (S.D.N.Y. 1975).

■ Applying this analysis to the instant case, it is evident that California, rather than New York, law should be applied. California, the State of plaintiff's residency, has a greater interest in compensating its residents for injuries of the type here alleged than New York may have in compensating nonresidents injured within their respective borders. Further, in a case of this nature, the state of a plaintiff's residency is normally the state of greatest injury. Here, the injuries allegedly suffered as a result of the wrongful publication all occurred in California. For these reasons, this court will apply California's law on damages.

The starting point in a determination of the measure of plaintiff's damages is California Civil Code § 3333, which provides that "[f]or the breach of an obligation not arising from contract, the measure of damages ... is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Here, plaintiff's proximately caused damages can be subdivided into three inter-related yet distinct categories: the emotional suffering caused by Celeb's publication of her photographs; the money not paid her for the use of her photographs; and the economic injury suffered as a result of the appearance of plaintiff's photographs in Celeb Magazine. Additionally, as discussed below, plaintiff is entitled to recover punitive damages for Celeb's intentional disregard of her rights.

■ Under California law, an invasion of an individual's right of privacy by the appropriation, for another's advantage, of an individual's name or likeness is an actionable tort. *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) (misappropriation of race car driver's photograph in nationally televised advertisement for cigarettes). Indeed, "the exploitation of another's personality for commercial purposes constitutes one of the most flagrant and common means of invasion of privacy." *Fairfield v. American Photocopy Equipment Co.*, 138 Cal.App.2d 82, 291 P.2d 194, 197 (1955).

In *Fairfield*, an action for the unauthorized use of plaintiff's name in advertisements for the defendant's photocopy machine, the court of appeals explained that the gist of a cause of action in a privacy

case is a direct wrong of a personal nature resulting in injury to feelings, without regard to any effect the publication may have on the business or pecuniary interests of the individual in the community. "The injury is mental and subjective. It impairs the mental peace and comfort of the person and may cause suffering much more acute than that caused by bodily injury." *Id.* 291 P.2d at 197. *See also Stilson v. Reader's Digest Association*, 28 Cal.App.3d 270, 104 Cal. Rptr. 581, 582 (1972), *cert. denied* 411 U.S. 952, 93 S.Ct. 1928, 36 L.Ed.2d 414 (1973).

■ With respect to the damages recoverable in such an action, the court in *Fairfield* held that a plaintiff is entitled to compensation for injury to his peace of mind and to his feelings, notwithstanding that in a case of this character, there can be no direct evidence of the amount of damages sustained:

> One whose right of privacy is unlawfully invaded is entitled to recover substantial damages, although the only damages suffered by him resulted from mental anguish. In such an action, the damages to be recovered are those which the law authorizes in cases of torts of that character, and if the law authorizes a recovery for wounded feelings in other torts of a similar nature, such damages would be recoverable in an action for violation of this right [citations omitted].

> \* \* \* \* \* \*

> The fact that damages resulting from an invasion of privacy cannot be measured by a pecuniary standard is not a bar to recovery.

*Id.* 291 P.2d at 197. Under California law, damages for embarrassment, humiliation, and other forms of mental anguish are recoverable. *See, e.g., Moore v. Greene*, 431 F.2d 584 (9th Cir. 1970).

■ At the inquest on damages in the instant case, plaintiff testified at length that the unauthorized publication of her photograph in Celeb Magazine caused her humiliation, mental anguish and distress. She was ridiculed by friends and business acquaintances for appearing in a magazine

of the caliber of Celeb. Consequently, she suffered loss of weight, sleep and concentration, and was forced to undergo medical treatment in connection with these ongoing health problems. Under California law, plaintiff is entitled to recover substantial compensation for the mental anguish she has suffered as a result of the unauthorized publication of her photographs. This court has determined that an award of $25,000 is reasonable in this respect.

■ Plaintiff is entitled to additional damages for not being compensated for the use of her photographs on the cover and in the back of Celeb Magazine. At the inquest on damages, plaintiff introduced an affidavit of Marc Bendesky, Controller of Penthouse International Limited (Exhibit 1). Mr. Bendesky stated that as compensation for appearing on the cover of the May, 1979 issue of Penthouse and in the centerfold and other places in the June, 1979 issue, plaintiff was paid $5,550 and was permitted to retain various articles of the wardrobe used at the photographic session. Plaintiff testified at the inquest on damages that she was also permitted to retain photographs for her portfolio, and that the value of the additional items received as compensation was approximately $1,200.

This court will assume, for purposes of calculating damages, that plaintiff, in 1981, would not appear in a magazine for less money than she received from Penthouse in 1979. As Celeb has defaulted, there has been no evidence offered to contradict this assumption. Consequently, plaintiff will be awarded $6,750.00 as damages for the loss of compensation for the use of her photographs on the cover and back of Celeb Magazine.

■ The third element of damages awarded to plaintiff is compensation for the economic injury she has suffered from the use of her photographs in advertisements for Celeb Magazine. That such economic injury to an individual's proprietary interest in his own identity may occur is recognized in California cases involving the misappropriation of a person's image in a com-

**984**

mercial advertisement.[2] *See Motschen-bacher v. R. J. Reynolds Tobacco Co., supra,* 498 F.2d at 824–25. The precise nature of the injury was recently explained in *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 160 Cal.Rptr. 323, 336, 603 P.2d 425 (1979):

> Often considerable money, time and energy are needed to develop one's prominence in a particular field... For some, the investment may eventually create considerable commercial value in one's identity.
>
> *   *   *   *   *   *
>
> An unauthorized commercial appropriation of one's identity converts the potential economic value in that identity to another's advantage. The user is enriched, reaping one of the benefits of the celebrity's investment in himself [citations omitted]. The loss may well exceed the mere denial of compensation for the use of the individual's identity. *The unauthorized use disrupts the individual's effort to control his public image, and may substantially alter that image. The individual may be precluded from future promotions in that as well as other fields.*

(emphasis added).

That is, in fact, precisely what plaintiff claims occurred here. Plaintiff testified that the editor of Penthouse Magazine and various advertisers in Penthouse, unaware that the photographs in Celeb Magazine were unauthorized, disparaged plaintiff for selling her identity to a magazine of that caliber. Because of her appearance in Celeb Magazine, plaintiff claims that Penthouse and these advertisers want nothing more to do with her as a model. As plaintiff's projected earnings for modeling fees are $7,000 for 1981, this court has determined to award her $7,000 for the economic loss suffered as a result of the use of her photographs in advertisements for Celeb Magazine.

■ Finally, California Civil Code § 3294 allows plaintiff to recover punitive dam-ages, in addition to actual damages, if Celeb has been ' guilty of "oppression, fraud or malice, express or implied..." Malicious conduct, as defined in § 3294, includes conduct carried on by a defendant with a conscious disregard of the rights or safety of others. Section 3294(c)(1). It may be established by a showing that the defendant's wrongful conduct was wilful, intentional and done in wreckless disregard of its possible results. *Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 60 Cal.Rptr. 398, 415 (1967).

■ Here, plaintiff, through her attorney, notified Celeb that the publication of plaintiff's photographs was unauthorized and demanded that Celeb immediately cease further publication. Notwithstanding this demand, in conscious disregard of plaintiff's rights, Celeb continued to release subsequent issues of the magazine containing the photographs in question. Further, the attorney for Celeb, who did not answer the complaint, file responsive pleadings, or appear at the preliminary injunction hearing, refused plaintiff's request to sign a consent order formally enjoining the use of the photographs and requiring their return. These factors, taken together, constitute a sufficient showing of malice to support an award of punitive damages.

■ The purpose of an award of punitive damages is to deter acts deemed socially unacceptable and, consequently, to discourage the perpetuation of objectional corporate policies. *Egan v. Mutual of Omaha Insurance Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *cert. denied* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). An award of punitive damages here would well serve the purpose of preventing the further practice, by Celeb and similar magazines, of intentionally publishing models' photographs without their permission. Accordingly, this court has determined to award plaintiff $25,000.00 punitive damages.

---

**2.** It is similarly recognized in California Civil Code § 3344, which provides for a minimum of $300 damages for the knowing use of a person's photograph without authorization for purposes of advertising. Section 3344 further provides that the $300 minimum is "cumulative and in addition to" any other remedies provided for by law.

Plaintiff is thus entitled to recover $38,-750.00 in compensatory damages and $25,-000.00 in punitive damages for Celeb's unauthorized publication of her photographs. Dated: New York, New York