**MAISON LAZARD ET COMPAGNIE, Numivest International Co., and Numivest Holding Corp., Plaintiffs,**

v.

**MANFRA, TORDELLA & BROOKS, INC. and Ronald E. Brigandi Co., Inc., Defendants.**

**84 Civ. 0585 (WK).**

United States District Court, S.D. New York.

May 11, 1984.

---

Patton, Bogg & Blow by David C. Todd, Washington, D.C., Stroock & Stroock & Lavan, New York City, for plaintiffs.

Cole & Deitz by Edward N. Meyer, Thomas J. Quigley, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

This action arises out of the sale of coins minted to commemorate the 1984 Los Angeles Olympic Games. In an effort to raise money for the games Congress, in July 1982, passed the Olympic Commemorative Coin Act, Public Law 97–220, 31 U.S.C. § 324 note, providing for the minting and sale of Olympic Commemorative Coins to be minted by the United States Mint and issued by the United States Department of the Treasury ("Treasury"). In May 1983, pursuant to §§ 4 and 5 of the Act, Treasury awarded to plaintiffs the exclusive rights to market and sell the coins outside the United States. Pursuant to § 7 of the Act, Treasury entered into an Implementation Agreement with plaintiffs which provided that:

> Treasury assigns to Contractor [plaintiffs] the exclusive rights to market the Coins in all areas outside of the United States or its possessions except United States Military and Diplomatic Establishments outside of the United States.

To protect the exclusivity of the rights granted to plaintiffs, the Agreement provided that:

> Treasury agrees that it will prohibit domestic bulk purchasers from selling, directly or indirectly, Olympic Coins to persons outside the United States.

Subsequent to its agreement with plaintiffs, Treasury contracted with domestic bulk purchasers for sale and distribution of the coins within the United States. In June 1983 Treasury made such a contract with defendant Manfra, Tordella & Brooks, Inc. ("Manfra"). The agreement between the parties included the provision that:

> BUYER [the domestic bulk purchaser] shall not be permitted to market or sell Olympic Coins, directly or indirectly, outside the United States, including U.S. military and diplomatic establishments outside the United States, nor shall BUYER be permitted to aid or assist anyone else to do so, whether by direct or indirect sale, conditional sale, consignment, assignment, or transfer of ownership interest.

Plaintiffs allege that Manfra, in violation of its obligation not to do so, arranged to sell the coins for resale outside the United States. Plaintiffs further allege that Manfra arranged a sham deal with defendant Brigandi, a New York corporation, to make it appear that Manfra sold the coins to Brigandi, which in turn sold and shipped the coins out of the country. In reality, plaintiffs contend, Brigandi never possessed or controlled the coins and was fully aware that the invoices it provided were to be used by Manfra to cover up the sales which it was prohibited from making.

Aside from the claim of conversion which has been withdrawn, plaintiffs allege the following causes of action: breach of contract, unfair competition under the Lanham Act and under New York law, interference with business relations, and a claim for punitive damages; the validity of each is disputed by defendants. For the reasons that follow we sustain each of plaintiffs' claims, except the one for punitive damages as to which we defer decision.

### A. The Contract Claim

■ It seems to us there could be no clearer indication of a contract for the benefit of a third party than one whose provisions are inserted for the express purpose of fulfilling one of the contractor's obligations to such third party. Defendants, relying on the doctrine of *expressio unius est exclusio alterius,* point to the circumstance

that their contract expressly provides that the government and various Olympic Committees may enforce it, but says nothing about plaintiffs' power to do so. As to that we agree with Judge Freedman's observation in *Durnin v. Allentown Federal Savings & Loan Association* (E.D.Pa.1963) 218 F.Supp. 716, 719, that the doctrine is "at best an unreliable basis for ascertaining intention," assuming "too much foresight in the draftsmen." Obviously this particular draftsman had been told to put something in the contract to please the Olympic Committees, and there is no reason to assume that he was trying to in any way cut back on the rights which the government had agreed to provide for the plaintiffs. Plaintiffs were clearly third-party beneficiaries of the Bulk Purchase Agreement between Treasury and Manfra, and have a cause of action for breach thereof.

## B. Federal Unfair Competition

■ This claim is only advanced on behalf of plaintiff Maison Lazard, a citizen of France, who invokes the protections of the Paris Convention and the Lanham Act. Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, "[a]ny person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party," 15 U.S.C. § 1126(b), "shall be entitled to effective protection against unfair competition." 15 U.S.C. § 1126(h). The Paris Convention, to which the United States and France are both signatories, assures nationals of such countries "effective protection against unfair competition." On the basis of these provisions, plaintiff Maison Lazard asserts a federal cause of action for acts of unfair competition which occurred in the United States. It seems to us established, under the authority of *Toho Co. Ltd. v. Sears, Roebuck & Co.* (9th Cir.1981) 645 F.2d 788, 792–93, that such a cause of action exists:

> [T]he federal right created by subsection 44(h) [15 U.S.C. § 1126(h)] is co-extensive with the substantive provisions of the treaty involved... In this way, subsections (b) and (h) [15 U.S.C. § 1126(b) and (h)] work together to provide federal rights and remedies implementing federal unfair competition treaties.

*Id.* at 792.

## C. New York Unfair Competition Claim

■ Before we may consider whether or not defendants' acts constitute unfair competition under New York law, we must determine whether New York law applies. To make such a determination we look to the conflict of laws rules of the jurisdiction in which we sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.* (1941) 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

Defendants assert that New York courts would apply the doctrine of *lex loci delecti* (place of wrong). To support their position they cite *Cousins v. Instrument Flyers, Inc.* (1978) 44 N.Y.2d 698, 376 N.E.2d 914, 405 N.Y.S.2d 441, in which the New York Court of Appeals stated, in *dicta*, that "lex loci delicti remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Cousins* was an action to recover for personal injuries relating to an airplane crash. The New York cases which have followed *Cousins* are similarly actions for personal injury. *See, e.g., Grancaris v. J.I. Haas Co.* (1980) 79 A.D.2d 551, 434 N.Y.S.2d 19; *Rakaric v. Croation Cultural Club* (1980) 76 A.D.2d 619, 430 N.Y.S.2d 829; *Bewers v. American Home Products Corp.* (S.Ct.N.Y.Cty.1982) 117 Misc.2d 991, 459 N.Y.S.2d 666. The meaning of "extraordinary circumstances" and whether "governmental interest" still plays a part in the total analysis is, as yet, unclear. The Second Circuit, commenting on New York's choice of law rules with respect to such personal torts, recently referred to it as "New York's choice of law quagmire." *O'Rourke v. Eastern Airlines,* 730 F.2d 842, 847 (2d Cir.1984).

■ We, however, are saved from wading into this quagmire. The New York choice of law rules with respect to *commercial torts* appears to be in a more

settled state. In such cases New York courts apply the law of the jurisdiction with the most significant relationship with the subject matter of the alleged tort. *Nader v. General Motors Corp.* (1970) 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765; *Reeves v. American Broadcasting Co.* (2d Cir.1983) 719 F.2d 602; *El Cid Ltd. v. New Jersey Zinc Co.* (1983) 575 F.Supp. 1513. In many cases, as part of the analysis, courts will factor in the interest a forum has in having its policies applied. *See, e.g., Clark v. Celeb Pub., Inc.* (S.D.N.Y.1981) 530 F.Supp. 979, 982; *Bing v. Halstead* (S.D.N.Y.1980) 495 F.Supp. 517, 519–20. We turn, therefore, to examine the events in issue to determine which of the possible fora has the most significant relationship with those events.

Plaintiffs allege that defendant Manfra, in violation of the bulk purchase agreement, agreed to sell Olympic coins for resale outside the United States, shipped the coins from New York to Germany and Japan, and received payment for these sales at bank accounts in New York. Manfra arranged, in New York, with defendant Brigandi to assist in the sales by having Brigandi prepare invoices reflecting sale and shipment from Brigandi to the German and Japanese purchasers. Payment was wired to Brigandi in New York who immediately transferred the money to Manfra's New York account. The German and Japanese purchasers (subjects of a suit in another jurisdiction) have advertised and sold, and continue to advertise and sell outside the United States.

■ Defendants contend that even under a comprehensive "relationship analysis" the court must choose Germany as having the more significant relationship with the alleged acts. (No party has suggested that Japanese law should apply, although the same kinds of activity that took place in Germany also took place in Japan.) They claim that the activity in New York merely laid the groundwork for tortious action, but was not in itself actionable and is not a sufficient connection with New York to warrant the application of New York law.

They argue that their activity in this case is similar to the activity of the defendants in *El Cid, supra.* In *El Cid* we said,

> We reject plaintiff's contention that New York's connections to this action outweigh those of Bolivia. Plaintiff relies heavily on the allegation that defendants' New York activities spawned the alleged conspiracy. This, however, establishes no more than a significant relationship with a plot which in and of itself is non-actionable.

*Id.* at 1513. In the case at bar, however, defendants did not merely, while in New York, dream up the possibility of misappropriating plaintiffs' exclusive rights to sell the coins overseas. They made the arrangements, shipped the coins, covered their tracks, and received payment—all in New York. Although the coins have been, and are being sold and advertised for sale overseas, we find, in the balance, that New York has a more significant relationship with the defendants' tortious activity than either place where the coins are being wrongfully sold. Additionally, although in *El Cid* we observed that New York had no interest in policing the activities of its citizens throughout the world, that observation is a far cry from saying that New York has no interest in the conduct of its citizens on its own soil.

■ Having concluded that New York law applies, it is clear to us that defendants' activity constitutes unfair competition. *Metropolitan Opera Ass'n. v. Wagner-Nichols Recorder Corp.* (Sup.Ct.N.Y. Co.1950) 199 Misc. 786, 101 N.Y.S.2d 483, *aff'd* 297 App.Div. 632, 107 N.Y.S.2d 795 (1st Dep't 1951); *Flexitized, Inc. v. National Flexitized Corp.* (2d Cir.1964) 335 F.2d 774, *cert. denied* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799.

### D. Interference With Contractual Regulations

■ In New York, "an unlawful interference with a person in the performance of his contract with a third party" is "a legal wrong," and the tort "extends to cases in which performance of the contract is ren-

dered more difficult or a party's enjoyment of the contract's benefits is lessened by the wrongdoer's actions." *Goodall v. Columbia Ventures, Inc.* (S.D.N.Y.1974) 374 F.Supp. 1324, 1332.

■ There can be no doubt that defendant Manfra knew that a third party had the exclusive rights to sell outside the United States and that by its acts it would make it impossible for the third party to reap the full benefits of its contract with Treasury. Such action constitutes an interference with contractual relations.

■ In their complaint plaintiffs mistakenly labeled their fourth cause of action "Interference With Business Relations." That cause of action, as defendants correctly assert, may require a showing of "solely malicious motive" or "unlawful means." But the tort of interference with contractual relations carries no such requirement. Unlike the interests protected by the torts of interference with business relations or prospective business advantage,

> greater protection is accorded an interest in an existing contract (as to which respect for individual contract rights outweighs the public benefit to be derived from unfettered competition) than to the less substantive, more speculative interests in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer).

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.* (1980) 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 633.

■ Because plaintiffs have alleged that defendants' activities violated their exclusive rights under the contract with Treasury, plaintiffs have stated the necessary elements for interference with contractual relations. The misdescription of the claim as one for "Interference With Business Relations" does not, given the liberal pleading rules of the Federal Rules of Civil Procedure, and defendants' failure to even suggest that they lacked fair notice, warrant dismissal of the claim.

### E. Punitive Damages

Plaintiffs seek an award of punitive damages, asserting that defendant Manfra's conduct constitutes "such wanton dishonesty as to imply a criminal indifference to civil obligations." Defendants, not surprisingly, ask us to dismiss this claim, stating that plaintiffs' action is really for breach of contract and in such a case punitive damages are not recoverable absent a showing that "public rights are involved." We find that dismissal at this stage of the proceedings is inappropriate and accordingly defer decision.

In summary, defendants' motion to dismiss the amended complaint for failure to state a claim or, in the alternative, to dismiss the claim for punitive damages is denied.

SO ORDERED.