**GENERAL MOTORS CORPORATION and Adam Opel AG, Plaintiffs,**

v.

**Jose IGNACIO LOPEZ DE ARRIORTUA, et al., Defendants.**

No. 96–71038.

United States District Court, E.D. Michigan, Southern Division.

Dec. 2, 1996.

Eugene Driker, Detroit, for plaintiffs.

James P. Denvir, Larry S. Gondelman, Anthony T. Pierce, Akin, Gump, Strauss, Hauer & Fold, L.L.P., Washington, DC, Howard J. Trienens, David T. Pritkin, Thomas D. Rein, Sidley & Austin, Chicago, IL, William A. Sankbeil, Kerr, Russell & Weber, P.L.C., Detroit, MI, for defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS COUNTS THREE AND FOUR OF THE COMPLAINT

EDMUNDS, District Judge.

This matter came before the court at a hearing on October 28, 1996, on the following motions: Defendants' joint motion to dismiss counts 3 and 4; VW, Piech, and Neumann's motion to dismiss counts 3 and 4; and VWOA and Lytle's motion to dismiss counts 3 and 4. For the reasons set forth below, Defendants' motions to dismiss are denied.

### I. Facts [1]

Plaintiffs, General Motors Corporation ("GM") and Adam Opel AG ("Opel"), brought suit against Defendants alleging theft of trade secrets and conspiracy. GM is an American corporation and Opel is a German corporation wholly owned by GM. Defendants include:

1. Volkswagen AG, a German corporation ("VW")

2. Volkswagen of America, Inc., wholly owned by Volkswagen AG ("VWOA")

3. The "Lopez Group," including the following individuals who worked at GM

---

[1] The facts are more fully set forth in this court's order denying Defendants' motions to dismiss for lack of personal jurisdiction filed on November 26, 1996.

or its subsidiaries until March of 1993 when they left and joined VW:

Jose Ignacio Lopez, a former executive at GM Espana, Opel, and GM (Europe) AG. On February 1, 1993 he became group vice president of GM. Subsequently, on March 10, 1993, he resigned from GM and moved to Germany. On March 16, he joined VW and was appointed to its management board.

Jose Manuel Gutierrez, executive director of purchasing with GM Espana (based in Spain). He quit on March 22, 1993. He moved to Germany and joined VW as a division head.

Jorge Alvarez, a platform manager for the S–Car and the O–car for Opel when he quit on March 22, 1993. He then joined VW's subsidiary SEAT, in Spain, as a purchasing director.

Rosario Piazza, a sourcing specialist for Opel when he quit on March 22, 1993. He then joined VW in Spain as head of forward sourcing.

Hugo Van der Auwera, executive director of worldwide purchasing, metallic commodity group, for GM Continental (based in Belgium) when he quit on March 22, 1993. He joined VW as a division head.

Francisco Garcia–Sanz, executive director of worldwide purchasing, electrical commodity group, for GM when he quit on March 22, 1993. He joined VW as a division head.

Andries Versteeg, manager-European liaison, advance purchasing and global sourcing, for GM when he quit on March 22, 1993. He joined VW as a division head.

Willem Admiraal, an employee of GM when he quit on March 22, 1993. He then joined VW. He is married to Lopez's daughter, Irene.[2]

4. The "VW Group" including:

Ferdinand Piech, the chairman of the board of VW;

Jens Neumann, a member of VW's management board and member of the VWOA board;

Jaero Wicker, a VW employee in Wolfsburg and later, when Lopez was hired by VW, an administrative assistant to Lopez; and

H.W. Lytle, executive director of human resources for VWOA.

Plaintiffs allege that while Lopez was a high level GM executive, he secretly communicated with VW representatives and agreed to leave GM and join VW. He agreed to bring confidential business plans and trade secret information with him. Lopez worked with the other Lopez Group Defendants to secretly collect confidential information. In March of 1993, the Lopez Group Defendants left GM and Opel to join VW where they were paid significantly higher salaries. They allegedly took over 20 cartons of stolen documents with them. Plaintiffs allege that Defendants copied the documents and entered them into VW computers, and then proceeded to shred the documents and cover up the theft.

On March 7, 1996, Plaintiffs filed this suit. Counts 3 and 4 of their complaint allege that Defendants violated the Lanham Act, 15 U.S.C. § 1126; and that Defendants violated the Copyright Act, 17 U.S.C. § 101 et seq. The complaint further alleges that VW has used and continues to use the trade secret information to reduce its costs and to increase its market share. Defendants moved to dismiss count 3 (Lanham Act) and count 4 (Copyright Act). For the reasons set forth below, Defendants' motions are denied.

## II. Standard for a Motion to Dismiss

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) this court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Company,* 991 F.2d 1236, 1240 (6th Cir.1993).

---

**2.** Defendants allege that Alvarez, Piazza, Garcia–Sanz, Versteeg, and Admiraal all had employ- ment contracts with Opel in Germany, not with GM in the U.S.

The complaint must include "direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (citations omitted).

## III. Analysis

### A. Lanham Act

■ All Defendants (except Alvarez, Piazza, and Versteeg who have not been served) have moved to dismiss count 3 of the complaint. Count 3 alleges that Defendants violated the substantive terms of the Paris Convention, an international agreement incorporated into section 44 of the Lanham Act, 15 U.S.C. § 1126. Defendants contend that the Lanham Act does not incorporate any substantive provisions of the Paris Convention, and thus that Plaintiffs have failed to state a viable claim for relief. They argue that the Paris Convention only required that signatory nations provide the same trademark protection to foreign citizens that they provide to their own citizens. Courts are split on the issue of whether section 44(b) of the Lanham Act incorporates substantive rights set forth in the Paris Convention.

Generally, the Lanham Act prohibits two types of unfair competition: trademark infringement (15 U.S.C. § 1114) and false designation of origin or "passing off" (15 U.S.C. § 1125). In addition, the Lanham Act provides rights stipulated by international conventions respecting unfair competition. 15 U.S.C. § 1127. Section 1127 provides:

> The intent of this chapter is . . . to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations.

This purpose is implemented in sections 44(b), (h), and (i). Section 44(b) provides:

> Any person whose country of origin is a party to any convention or treaty relating to trademarks . . . to which the United States is also a party . . . shall be entitled

to the benefits of this section under the conditions expressed herein *to the extent necessary to give effect to any provision of such convention [or] treaty . . . in addition to the rights to which any owner of a mark is otherwise entitled* by this chapter.

15 U.S.C. 1126(b) (emphasis added). Under section 44(h), foreign citizens are entitled to protection against unfair competition as follows:

> Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

15 U.S.C. 1126(h). The Act specifically provides under section 44(i) that United States citizens shall have the same rights as foreigners. "Citizens or residents of the United States shall have the same benefits as are granted by this section to persons described in subsection (b) of this section." 15 U.S.C. 1126(i).

One treaty incorporated by this section is the International Convention for the Protection of Industrial Property, the Paris Convention. 24 U.S.T. 2140 (July 14, 1967). The Paris Convention requires signatory nations to prohibit unfair competition:

> (1) The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition.[3]
>
> (2) Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition.

Paris Convention, article 10*bis.* The broad concept of unfair competition set forth in the Paris Convention has been described as follows:

> appropriate legal remedies effectively to repress all the acts referred to in Articles 9, 10, and 10*bis.*

---

**3.** Article 10*ter* of the Paris Convention also requires signatory nations to provide for legal remedies to enforce Article 10*bis;*

The countries of the Union undertake to assure to nationals of the other countries of the Union

Article 10*bis* is not premised upon the narrow meaning of "unfair competition" as it was understood in American common law, but adopts the more liberal construction of the European countries such as France, Germany and Switzerland ... The statement that unfair competition is competition "contrary to honest practice" is not a definition; it merely expresses the concept that a particular act of competition is to be condemned as unfair because it is inconsistent with currently accepted standards of honest practice. It impliedly affirms that unfair competition is too broad a concept to be limited to any narrow definition such as for instance, passing off.

4A Rudolf Callmann, *The Law of Unfair Competition, Trademarks and Monopolies,* § 2610 (4th ed.1994). The United States and Germany are both signatories to the Paris Convention.

Defendants concede that the Lanham Act incorporates the Paris Convention. However, they contend that the Paris Convention does not provide substantive rights, and that it only requires "national treatment." One authority on trademark law explained this interpretation of the Convention:

The Paris Convention is essentially a compact between the various member countries to accord in their own countries to citizens of the other contracting parties' trademark and other rights comparable to those accorded their own citizens by their domestic law. *The underlying principle is that foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens ["national treatment"].* The Convention is not premised upon the idea that the trademark laws of each member nation shall be given extraterritorial application, but on exactly the converse principle that each nation's law shall have only territorial application.

*In re Compagnie Generale Maritime,* 993 F.2d 841, 850 (Fed.Cir.1993) (Nies, J., dissenting) (quoting 1 McCarthy, *Trademarks and Unfair Competition,* § 19:24, at 927 (2d Ed.1984) (emphasis added)).

Agreeing with the "national treatment" analysis, in *Vanity Fair Mills, Inc. v. T.* *Eaton Co.,* 234 F.2d 633, 644 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), the Second Circuit interpreted the Paris Convention and the Lanham Act as providing only limited protection from acts of unfair competition. In that case, plaintiff was an American company who brought suit against a Canadian company, alleging that the defendant violated plaintiff's trademark when it sold goods in Canada using plaintiff's "Vanity Fair" label. The court held that the Paris Convention was premised on the concept of national treatment and that the laws of the signatory nations should not have extraterritorial application. Thus, plaintiff could not hold the defendant Canadian corporation liable under American law for a trademark violation that occurred in Canada. *See also Majorica S.A. v. Majorca International, Ltd.,* 687 F.Supp. 92 (S.D.N.Y.1988) (following *Vanity Fair,* court held that where Spanish Company sued American Company, Spanish law was not entitled to application in U.S. under Paris Convention). *See L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 652 (3d Cir.1954) (in purely domestic case, where one American company sued another, section 44(b) did not "create a federal law of unfair competition available to United States citizens one against the other nor does it grant the federal courts any new authority to hear such controversies between citizens.")

Contrary to *Vanity Fair,* other courts have held that the Lanham Act incorporates international agreements. In *Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788, 792 (9th Cir.1981), a Japanese company brought suit against Sears, an American company, alleging unfair competition. The court explained that sections 44(b) and (h) incorporated the provisions of a treaty between the United States and Japan. "The federal right created by subsection 44(h) is coextensive with the substantive provisions of the treaty involved.... [S]ubsections (b) and (h) work together to provide federal rights and remedies implementing federal unfair competition treaties." *Toho,* 645 F.2d at 792. The U.S.-Japan treaty only required national treatment. Thus, the court reasoned that the Japanese company was entitled to bring the same claims as an American company would

be entitled to bring: both claims for trademark infringement and false designation of origin under the Lanham Act as well as a claim for unfair competition under state law.

Domestic companies are entitled to federal protection against trademark infringement, 15 U.S.C. § 1114 (1976), and passing off, 15 U.S.C.; § 1125(a) (1976). They are also entitled to the protection accorded them by any applicable state law of unfair competition. Subsection 44(h) requires only that Toho be granted these same protections because it extends only as far as is necessary to give effect to the treaty. *Thus, the practical effect of section 44 and this treaty is to provide a federal forum in which Toho can pursue its state claims.*

*Toho,* 645 F.2d at 793 (emphasis added).

Still other courts have taken *Toho* one step further and have held that the Lanham Act incorporates the substantive provisions of the Paris Convention and thus creates a federal law of unfair competition applicable in international disputes. In *Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.,* 585 F.Supp. 1286, 1289 (S.D.N.Y.1984), a French company brought suit against an American company, alleging that the American company sold commemorative Olympic coins overseas in violation of the plaintiff's exclusive right to make such sales. In essence, the French company claimed that the defendant misappropriated an exclusive right and that this constituted unfair competition under the Paris Convention. The court followed *Toho,* holding that the Lanham Act incorporated the Convention. Because the Paris Convention provides broad protection from unfair competition, the court held that the plaintiff had a valid federal claim for misappropriation of an exclusive right. *Accord Laboratorios Roldan, C. por A. v. Tex International, Inc.,* 902 F.Supp. 1555, 1568 (S.D.Fla.1995) (because Dominican company was entitled to protection from unfair competition under the Lanham Act and the Paris Convention, it was entitled to bring federal claim against American company for trademark and trade dress infringement and misrepresentation).

The court is persuaded that *Toho* and *Maison Lazard* properly interpret the Lanham Act as incorporating the substantive provisions of the Paris Convention. The express purpose of the Lanham Act dictates this result. "The intent of this chapter is ... to provide rights and remedies stipulated by treaties and conventions...." 15 U.S.C. § 1127. The Paris Convention provides that signatory countries must protect individuals from unfair competition. Article 10*bis.* Subsection (b) of the Lanham Act implements this concept by providing that foreigners are entitled to benefits "to the extent necessary to give effect to any provision" of a convention. Subsection (h) specifies that foreigners are entitled "to protection against unfair competition."

The intent of Congress to incorporate substantive rights is further manifested in subsection (i), which provides that United States citizens shall be entitled to the same rights as foreign citizens. It was necessary to enact subsection (i) to make it clear that United States citizens were entitled to *additional* rights provided by the treaties incorporated. If the incorporation of the treaty did not incorporate additional rights, it would have been unnecessary to enact section 44(i). Interpreting section 44(b) as merely requiring "national treatment" renders section 44(i) superfluous. Courts must interpret statutes so as to give effect to every word and to avoid rendering certain language superfluous. *Director, Off. of Workers' Comp. Programs v. Goudy,* 777 F.2d 1122, 1127 (6th Cir.1985) (citing *United States v. Menasche,* 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955)).

The legislative history also reveals Congressional intent to incorporate additional rights and to provide such rights both to foreigners and to citizens. Congress expressed its concern that Americans be given the same protection from unfair competition as foreigners.

We have the curious anomaly of this Government giving by treaty and by law with respect to trade-marks and unfair competition to nationals of foreign governments greater rights than it gives its own citizens.... This [subsection 44(i) in the final draft] is an attempt to put the citizen on an equality with the foreigner....

Hearings on H.R. 4744 Before the Subcomm. on Trademarks of the House Comm. on Patents, 76th Cong., 1st Sess. (1939), p. 164. Congress also explained that the Paris Convention prohibited unfair competition more broadly than did the Lanham Act. "The European Convention [meaning the Paris Convention] however, goes much farther than that and prohibits commercial bribery among other things...." *Id.* at 168.[4]

The legislative history also reveals that Congress specifically considered whether it should broadly prohibit unfair competition. A prior draft of section 44 included the following as subsection (g):

All acts of unfair competition in commerce are declared to be unlawful and the provisions of section 32 to 35 inclusive shall be applicable thereto.

*Id.* at 163. One Congressman pointed out that the term "unfair competition" included all types of artificial interference with trade, including disparagement, trade bribery, and the like. *Id.* at 166. This draft of the statute provided the rights that the United States was obligated to provide by the Paris Convention. *Id.* at 164. At the subcommittee hearing, the legislators decided that the term "unfair competition" as used in subsection (g) was "dangerously broad," *id.* at 167, and that subsection (g) should be deleted. *Id.* at 165–68. The legislators did not acknowledge that by deleting subsection (g), the statute failed to fully incorporate the Paris Convention.

However, the legislators reversed this position. The final version of the statute contains language substantially similar to the deleted subsection (g). As discussed above, section 44(h) provides foreigners with "effective protection against unfair competition."

The inclusion of this language is consistent with Congress' concern that it fully implement the Paris Convention, including the Convention's broad prohibition of unfair competition.

Opel seeks the right to sue for unfair competition pursuant to 44(h), and GM seeks to enforce the same rights pursuant to section 44(i). Because the Lanham Act incorporates the Paris Convention's broad prohibition against unfair competition, Plaintiffs have stated a claim.[5]

■ Defendants also claim that the Lanham Act does not reach extraterritorial acts. This is incorrect. Congress has the power to regulate even entirely foreign commerce where it has a substantial effect on commerce between the states or between the United States and foreign countries. *Vanity Fair,* 234 F.2d at 641. *Accord Consolidated Gold Fields PLC v. Minorco, S.A.,* 871 F.2d 252, 261–62 (2d Cir.1989) (federal statutes apply if underlying conduct occurred within U.S. or if conduct which occurred abroad has substantial effects within U.S.). "Particularly is this true when a conspiracy is alleged with acts in furtherance of that conspiracy taking place in both the United States and foreign countries." *Id. See also Steele v. Bulova Watch Co.,* 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952) (holding U.S. citizen who sold infringing watches only in foreign countries liable under Lanham Act).

## B. Copyright

In count 4 of the complaint, Plaintiffs allege direct and contributory copyright infringement. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971) (contributory infringement established when individual "in-

---

4. Defendants also contend that if the Paris Convention provides substantive rights it is not clear what those rights are. While the precise nature of these rights is not clear at this juncture, it is clear that the rights provided by the Paris Convention include protection from commercial bribery. It also should be noted that because Plaintiffs seek the enforcement of foreign law, it is their obligation to inform the court of the content of that law. *Rolnick v. El Al Israel Airlines, Ltd.,* 551 F.Supp. 261 (E.D.N.Y.1982).

5. Defendants also argue that interpreting section 44 as incorporating the Paris Convention would eliminate diversity jurisdiction in all actions involving unfair competition. This is overstated. The court's holding is limited to the circumstances of this case. The Lanham Act incorporates the substantive provisions of the Paris Convention and thus creates a federal law of unfair competition applicable in international disputes. Diversity jurisdiction would still apply in a domestic dispute. It should also be noted that this issue is not before the court. The court has proper federal question jurisdiction in this case.

duces, causes or materially contributes to the infringing activity of another" with knowledge of the activity). On multiple grounds, Defendants move to dismiss the claim for copyright infringement. All of Defendants' arguments lack merit.

■ First, Defendants claim that GM may not sue for infringement of works that are not registered. 17 U.S.C. § 411. Plaintiffs, however, have stated a claim for copyright infringement sufficient under 12(b)(6) because they have alleged infringement of eight copyrighted works. Further, Opel may sue on unregistered works pursuant to the Berne Convention. 17 U.S.C. § 411(a) ("Except for actions for infringement of copyright in Berne Convention works whose country of origin is not the United States . . . .")

Second, Defendants argue that the Copyright Act does not extend to authorized copying, and that because the Lopez Group had legitimate access to the documents, they were authorized to copy them. This argument is disingenuous. The complaint alleges unauthorized copying. "At no time did any of the defendants have authorization from either of the plaintiffs to copy GM documents, records, or works for the purpose of dissemination or deliver to any of the VW Group defendants in this action." Complaint para. 260.

■ Third, Defendants contend that the Copyright Act does not extend to extraterritorial copying. This argument is meritless. Copying from an unauthorized copy constitutes infringement. *Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994). If all the copying occurred outside the U.S., the Copyright Act would not apply. *Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). However, as long as some occurred in the U.S., the Copyright Act applies. *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 73 (2d Cir.1988) (predicate act of infringement occurred in U.S.).

■ Defendants also claim that Plaintiffs must specify how each Defendant had knowl-

edge and exactly which works each Defendant copied. As Plaintiffs point out, under 12(b)(6), it is only necessary that Plaintiffs state a claim. This level of specificity is not required. Under 12(b)(6) this court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Company*, 991 F.2d 1236, 1240 (6th Cir.1993).

The complaint alleges that the Defendants copied, or directed others to copy, Plaintiffs' copyrighted works in the United States for the purpose of facilitating their theft, and that they participated in transporting the documents abroad so that they could be further copied and delivered to VW. Complaint para. 259–61. Lytle and VWOA are alleged to have assisted in transporting copyrighted documents. Complaint para. 157–58. All Defendants are alleged to have acted with knowledge. This is sufficient to state a claim for copyright infringement.

Finally, in their reply brief, Defendants argue that the court does not have federal question jurisdiction over the copyright claim because the crux of the claim is a claim for theft of trade secrets. Defendants rely on *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 932 (2d Cir.1992), *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1045 (D.C.Cir.1981), *Berger v. Simon & Schuster*, 631 F.Supp. 915, 919 (S.D.N.Y.1986), and *Hanna–Barbera Productions, Inc. v. Screen Gems–EMI Music Inc.*, 829 F.Supp. 67, 72 (S.D.N.Y.1993). *See also Mother Waddles Perpetual Mission, Inc. v. Frazier*, 904 F.Supp. 603 (E.D.Mich.1995). These cases are inapposite, as they all deal with a situation where the plaintiff alleged both a copyright claim and a claim for breach of a contract licensing use of the copyright. The issue in those cases was whether the claim arose under copyright law or state law regarding breach of contract.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons ex-

plained above the court hereby orders as follows:

Defendants' joint motion to dismiss counts 3 and 4 is DENIED;

VW, Piech, and Neumann's motion to dismiss counts 3 and 4 is DENIED; and

VWOA and Lytle's motion to dismiss counts 3 and 4 is DENIED.