183 F.Supp.2d 1158 (2000)
BP CHEMICALS LTD., et al., Plaintiff(s),
v.
Radoslav Rad BALOUN, et al., Defendant(s).
No. 4:98CV932 RWS.
United States District Court, E.D. Missouri, Eastern Division.
October 11, 2000.
*1159 Mark S. Deiermann, Charles A. Weiss, Jennifer M. Arthur, Bryan Cave LLP, St. Louis, MO, Robin G. Weaver, Daniel L. Brockett, Harris A. Senturia, James W. Satola, Brenda M. Johnson, Micah D. Green, Squire and Sanders, Cleveland, OH, for plaintiffs.
Robert T. Haar, Susan E. Bincler, Monica J. Allen, Haar and Woods, LLP, St. Louis, MO, Rex H. White, Jr., Austin, TX, for Radoslav R. Baloun, Acetec, Inc., defendant.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
BP Chemicals, Inc., BP America, Inc. and BP Chemicals Ltd. (collectively "BP") claim that defendant Radoslav Baloun and his company Acetec, Inc. stole BP's trade secrets in acetic acid manufacturing technology and sold the information to a Taiwanese company. BP claims that in doing so, Baloun and Acetec violated the Lanham Act, the Missouri Uniform Trade Secret Act ("MUTSA"), and Missouri common law. Baloun and Acetec seek dismissal of BP's Lanham Act claim because they argue the Lanham Act does not apply to misappropriation of trade secret claims. Baloun and Acetec seek dismissal of BP's MUTSA claim because they argue the alleged misappropriation pre-dated the enactment of MUTSA which would make the statute inapplicable[1].
Because the Lanham Act does provide at a minimum a federal forum for state law claims of misappropriation of trade secrets to foreign nationals, Baloun and Acetec's motion seeking dismissal of BP's Lanham Act claim will be denied. Baloun and Acetec's motion to dismiss the MUTSA claim will be granted however, because the alleged misappropriation did pre-date the enactment of the statute.

I. Factual Background
BP America, Inc. f/k/a BP North America, Inc. hired Baloun in 1986. Baloun's work for BP focused exclusively on projects related to BP Chemicals Ltd.'s proprietary methanol carbonylation technology for the manufacture of acetic acid (the "acetic acid technology"). BP alleges that this technology was a trade secret which Baloun was obligated to keep confidential.
Baloun left BP's employment in 1992. BP alleges that Baloun took BP's proprietary manuals for the acetic acid technology with him when he left. Baloun denies taking the manuals with him.
While the manner in which Baloun came to possess BP's manuals is in dispute[2], it *1160 is undisputed that Baloun did come into possession of them at some point in 1992. It is also undisputed that Baloun did not do anything with the manuals at that time.
In the fall of 1995 Baloun and Acetec, Inc. began negotiating the terms of a consulting relationship with Chang Chun Petrochemical Co., Ltd. ("Chang Chun"). The terms of that consulting relationship were finalized in January 1996. Baloun delivered BP's proprietary acetic acid manuals and other documents containing BP's acetic acid technology to Chang Chun beginning in March 1996 and continuing for the next two years.

II. Legal Standard
As stated above, when considering a motion for summary judgment, the Court must determine whether the record, when viewed in the light most favorable to the non-moving party, shows any genuine issue of material fact. Fed.R.Civ.P. 56(c). See generally, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. There is, however, no express or implied requirement in Rule 56 that the moving party must support its motion with affidavits or other materials negating the opponent's claim. Id. The burden is not on the moving party to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Id. at 325, 106 S.Ct. 2548. Instead, "the burden on the moving party may be discharged by `showing'that is, pointing out to the district courtthat there is an absence of evidence to support the nonmoving party's case." Id. As long as the record before the court demonstrates that there is no genuine issue of material fact, summary judgment should be granted. Id. at 323, 106 S.Ct. 2548.
When faced with a motion for summary judgment meeting the standard set forth above, the non-moving party may not rest upon the mere allegations or denials of its pleadings alone, but must introduce affidavits, depositions, answers to interrogatories, or admissions on file designating specific facts showing that there is a genuine issue of material fact on each essential element of the claim for trial. Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Jetton v. McDonnell Douglas, Corp., 121 F.3d 423, 427 (8th Cir.1997); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir.1987).

III. BP's Lanham Act Claims
Baloun moves to dismiss Count I of the Fourth Amended Complaint, BP's claim under the Lanham Act, for failure to state a claim. BP also moves to dismiss Count VI of the Fourth Amended Complaint which seeks attorneys fees under the Lanham Act.
In Count I BP claims that Baloun and Acetec violated the Lanham Act by engaging in unfair competition through misappropriation of trade secrets. Baloun and Acetec argue that the Lanham Act does not provide a remedy for misappropriation of trade secrets. Further, Baloun and Acetec argue that to the extent such a claim could be brought, it is not available to BP Chemicals, Inc. and BP America, Inc because they are United States corporations.
Baloun's argument as to the American corporations, BP Chemicals, Inc. and BP America, Inc., is moot because BP affirmatively *1161 states in its responsive brief that the Lanham Act claim is not brought on behalf of those corporations but solely by BP Chemicals, Ltd., a British corporation.
The remainder of Baloun's motion fails because, as discussed below, the Lanham Act does provide a federal forum in which a foreign national can bring a claim of unfair competition through misappropriation of trade secrets.
Generally, the Lanham Act prohibits two types of unfair competition (1) trademark infringement (15 U.S.C. § 1114) and (2) false designation of origin (15 U.S.C. § 1125). Section 1127 of the Act makes clear however that it was also enacted to "provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations." 15 U.S.C. § 1127.
The Lanham Act accomplishes the directive of § 1127 in § 44 of the Act. Section 44(b) provides:
"[a]ny person whose country of origin is a party to any convention or treaty relating to trademarks ... or repression of unfair competition, to which the United States is also a party ... shall be entitled to the benefits of this section ... to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter."
15 U.S.C. § 1126(b). Section 44 further protects foreign nationals against unfair competition in subsection (h) which provides:
"[a]ny person designated in subsection (b) of this section ... shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition".
15 U.S.C. § 1126(h). Subsection(i) then confers all rights given to foreign nationals under subsections (b) and (h) to U.S. citizens.
One of the treaties which section 44 of the Lanham Act effectuates is the International Convention for the Protection of Industrial Property (the Paris Convention) which requires signatory nations to "assure nationals of [other signatory] countries effective protection against unfair competition." Paris Convention, Article 10bis.
Great Britain and the United States are both signatories of the Paris Convention and it is the rights conferred by the Paris Convention upon which BP bases its claim for unfair competition through misappropriation of trade secrets.
The Paris Convention does not define the parameters of the unfair competition against which it protects, other than to state "[a]ny act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition." Id. Moreover, this definition is not intended to articulate a legally enforceable standard for violation of the Convention's provisions. See, Kemart Corp. v. Printing Arts Research Laboratories, Inc., 269 F.2d 375, 389 (9th Cir.1959). Rather, the Convention provides that "[t]he countries of the Union [shall] undertake to assure to nationals of the other countries of the Union appropriate legal remedies effectively to repress all of the acts referred in Articles 9, 10 and 10bis." Id.
It is well-settled in the courts where this question has been addressed that the United States accomplished the Paris Convention's directive to assure appropriate legal remedies to foreign nationals by enacting section 44 of the Lanham Act. See, Scotch *1162 Whisky Assoc. v. Majestic Distilling Co., 958 F.2d 594 (4th Cir.1992), Litton Systems, Inc. v. Ssangyong Cement Indus. Co. Ltd., 107 F.3d 30, 1997 WL 59360 (Fed.Cir. 1997), Toho Co. Ltd. v. Sears, Roebuck & Co., 645 F.2d 788 (9th Cir.1981), Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633 (2nd Cir.1956), L'Aiglon Apparel v. Lana Lobell, Inc., 214 F.2d 649 (3rd Cir.1954), Piaggio & C.S.p.A. v. Scooterworks USA, Inc., 1999 WL 674749 (N.D.Ill.1999), Mattel, Inc. v. MCA Records, Inc., 28 F.Supp.2d 1120 (C.D.Ca.1998), Eli Lilly & Co. v. Roussel Corp., 23 F.Supp.2d 460 (D.N.J.1998), Piccoli v. Calvin Klein Jeanswear Co., 19 F.Supp.2d 157 (S.D.N.Y. 1998), General Motors, Corp. v. Ignacio Lopez de Arriortua, 948 F.Supp. 684 (E.D.Mich.1996), Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc., 585 F.Supp. 1286 (S.D.N.Y.1984).
What is not well-settled is the scope of the rights conferred upon foreign nationals by the Lanham Act. Some courts have held that the Lanham Act confers the substantive rights of the subject treaty, here the Paris Convention, respecting unfair competition (the creation of federal rights approach). See, Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788, 792 (9th Cir.1981). Other courts have held that the Lanham Act does nothing more than give to foreign nationals the same rights respecting unfair competition available to U.S. citizens under their own domestic law (the national treatment approach). See, Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 644 (2d. Cir.1956). The Eighth Circuit has not yet addressed this question.
Regardless of which approach is taken in this case, BP Chemicals, Ltd. can maintain a claim for unfair competition through misappropriation of trade secrets. If the national treatment approach is taken, BP could maintain all causes of action available to U.S. citizens including those at common law and under the Lanham Act. If the creation of federal rights approach is taken the Paris Convention provides that foreign nationals shall have the causes of action provided by the laws of the signatory nations. In this case that would achieve the same result, the causes of action set forth under the Lanham Act and those available at common law. Either way, BP Chemicals, Ltd. has stated a claim upon which relief can be granted and Baloun and Acetec's motion for summary judgment as to Counts I and VI of the Fourth Amended Complaint will be denied.

MUTSA Claim
Baloun also asks this Court to dismiss BP's claims under the Missouri Uniform Trade Secrets Act ("MUTSA") § 417.450 et seq. Mo.Rev.Stat. Baloun claims that MUTSA does not apply to the misappropriation of trade secrets alleged in BP's Fourth Amended Complaint because the misappropriation began before the effective date of MUTSA. The statutory scheme of MUTSA is, by its express language, not retroactive.
Section 417.465 provides that "with respect to a continuing misappropriation that began prior to August 28, 1995, (the effective date of MUTSA) sections 417.450 to 417.467 shall not apply to the continuing misappropriation that occurs after such date." (emphasis added) § 417.465 Mo.Rev. Stat. MUTSA does not define the term "continuing misappropriation"[3]. It does define "misappropriation" however as:
(a) Acquisition of a trade secret of a person by another person who knows or *1163 has reason to know that the trade secret was acquired by improper means; or
(b) Disclosure or use of a trade secret of a person without express or implied consent by another person who:
a. Used improper means to acquire knowledge of the trade secret; or
b. Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake; or
c. At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:
i. Derived from or through a person who had utilized improper means to acquire it;
ii. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
iii. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
BP claims Baloun took BP's proprietary manuals with him without BP's permission when he left BP's employ in 1992. BP further alleges that beginning in August 1995, one day after the date MUTSA was enacted, Baloun began a course of dealings with Chang Chun during which he divulged the contents of BP's proprietary manuals. BP argues that Baloun's theft of the manuals in 1992 and his subsequent sale of the information in 1996 are two discrete acts. In essence two acts of misappropriation. Baloun argues that they are an ongoing act constituting a continuing misappropriation for purposes of § 417.467.
When interpreting statutes, the court's purpose is to ascertain the intent of the legislature. State v. Plastec, Inc., 980 S.W.2d 152, 155 (Mo.App.1998). In doing so, the court looks to the language used, giving it its plain and ordinary meaning. State v. Lanier, 985 S.W.2d 377, 379 (Mo. App.1999).
BP's claim clearly falls under § 417.453(b)(a). The plain language of that section provides a misappropriation occurs when a trade secret is disclosed by someone who used improper means to obtain it. Thus under the plain language of the statute, an improper acquisition is a necessary part of the act which constitutes the misappropriation. The two actions, improper acquisition and disclosure, are necessarily linked together in order to amount to a misappropriation. They cannot therefore be split apart for purposes of determining when the misappropriation occurred. Clearly, the misappropriation would have begun in 1992 when BP alleges that the manuals were stolen and continued in 1995 when Baloun and Acetec allegedly began disclosure of the information contained therein.
Section 417.467 makes clear that when a continuing misappropriation began prior to August 28, 1995, MUTSA does not apply. § 417.467 Mo.Rev.Stat. Baloun and Acetec's actions constitute a continuing violation which began in 1992, long before the August 28, 1995 date contained in the statute.
MUTSA does not apply, therefore, to BP's misappropriation of trade secrets claim against Baloun and Acetec and summary judgment will be granted in their favor on that claim.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment [Doc. 218] is GRANTED in part and DENIED in part.

*1164 MEMORANDUM AND ORDER

IT IS HEREBY ORDERED that the motion of Robert T. Haar, Susan Bindler and Monica J. Allen and the law firm of Haar & Woods to withdraw as counsel for defendants Acetec, Inc. and Radoslav Baloun [Doc. # 224] is GRANTED.
NOTES
[1] BP has filed a brief in opposition to Baloun and Acetec's motion. The use of sarcasm and hyperbole in that brief does not serve the arguments made therein. Rather, the inappropriate tone of BP's brief detracts from any force its arguments have. Further, because of BP's propersity to drop footnotes in minuscule typeface, the Bankruptcy Court before which the remainder of this action will be litigated may be well advised to issue an order dictating the minimum size font acceptable to that court.
[2] Baloun claims that they were sold to him in a Russian hotel room by a man who is now deceased.
[3] Nor has the term been interpreted by any court in Missouri or in any other state that has adopted the Uniform Trade Secrets Act.